Sarah L. Hennessy, Esq.
FLAHERTY HENNESSY, LLP
8055 W. Manchester Avenue, Suite 420
Playa Del Rey, CA 90293
Phone: 310.305.1280
Fax:    310.305.1210
Email: sarah@fhattorneys.com

Jordan A. Shaw, Esq.
*Pro Hac Vice Sought*
Edward H. Zebersky, Esq.
*Pro Hac Vice Sought*
Mark Fistos, Esq.
*Pro Hac Vice Sought*

ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email:        jshaw@zpllp.com
Secondary Email:      mperez@zpllp.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY SILVERMAN, individually and on behalf of all others similarly situated, | **CLASS REPRESENTATION** |
| Plaintiff, | **JURY TRIAL REQUESTED** |
| v. | |
| MOVE, INC. a California corporation, and NATIONAL ASSOCIATION OF REALTORS, an Illinois corporation, | |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff, Courtney Silverman (hereinafter "Plaintiff"), individually, and on behalf of all

those similarly situated, by and through her undersigned counsel, brings this class action against

Defendants, Move, Inc. (hereinafter, "MI") and the National Association of Realtors (hereinafter, "NAR") (collectively "Defendants"), alleging violations of the Telephone Consumer Protection Act (hereinafter "TCPA"), 47 U.S.C. § 227, and in support thereof states as follows:

## I.    INTRODUCTION

1.    This is a class action stemming from Defendants' invasion of privacy, which violated the TCPA.

2.    Defendant NAR owns the website Realtor.com.

3.    Defendant MI operates the website Realtor.com for NAR and its members.

4.    In their persistent efforts to advertise and solicit business, Defendants, acting in concert or on each-other's behalf, engaged in systematic text-message advertising/telemarketing campaigns, without regard for the law or the privacy rights of others.

5.    In furtherance of their campaign, Defendants, using automatic telephone dialing equipment, routinely and systematically sent unsolicited, invasive, advertising text messages to the cellphones of Plaintiff and the Class, despite their documented and ascertainable requests to "Stop" the messages.

6.    Plaintiff seeks to enjoin Defendants' illegal conduct, which has resulted in an invasion of privacy, and disruption of the daily lives of hundreds or thousands of Florida residents, and seeks statutory damages on behalf of herself and members of the Class as defined below, as well as any other available legal or equitable remedies.

## II.    PARTIES, JURISDICTION, AND VENUE

7.    Plaintiff is a natural person who, at all times relevant to this action, was a resident and citizen of Broward County, Florida.

8.      Defendant NAR is an Illinois corporation and citizen, which transacts substantial business in Florida.

9.      Defendant MI is a California corporation and citizen, which transacts substantial business in Florida. MI's business is varied but relates to the online residential real estate market.

10.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.[1]

11.     This Court has personal jurisdiction over Defendants and venue is proper in this Court because Defendants transact substantial business in the forum and Defendant Move, Inc.'s principal place of business is in Santa Clara, California.

12.     In 1996, NAR and MI (including their subsidiaries) entered into what they have described as a "strategic partnership" via a written agreement that allows MI to operate NAR's flagship consumer home listing and marketing website, www.realtor.com.  NAR owns the domain Realtor.com and licensed its use to MI.  The site is intended to market homes for sale to consumers and develop leads on behalf of NAR members.  This agreement has since been amended.  As part of Defendants' strategic partnership, the companies share confidential information, board members, logos, approve some of each other's mergers, and approve some of each other's directors.  Their self-described strategic partnership has also led to their description of "Realtor.com" as a "division of" MI and part of MI's "network."

13.     At all times material hereto, NAR and MI, acted individually, and acted jointly and in concert, in violation of the TCPA, and each Defendant was the agent of the other acting with actual or apparent authority for purposes of sending and handling the text messages at issue, including those sent to Plaintiffs and the Class.

---

[1] *See Mims v. Arrow Fin. Services., LLC*, 132 S. Ct. 740, 744 (2012).

14.     All of the telemarketing text messages at issue stated or indicated that they were from "Realtor.com," which NAR has represented and promoted and continues to represent and promote to the public as its website.

### III.     THE TELEPHONE CONSUMER PROTECTION ACT

15.     The TCPA regulates and restricts the use of automatic telephone dialing or texting systems ("ATDS") to protect against harassing invasions of privacy.

16.     These ATDS devices allow Defendants to send hundreds or thousands of text messages almost instantly, without regard to the identity, consent, or privacy of the recipients.

17.     Specifically, the TCPA provides that it shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States, to make any call using an ATDS to any telephone number assigned to a cellphone other than a call made for emergency purposes or made with the prior express consent of the called party. See 47 U.S.C. § 227.

18.     When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance." Id. at §§ 12-13.

19.     The TCPA's ban on telephone calls made using an automatic telephone dialing system ("ATDS" or "autodialer"), as defined by 47 U.S.C. § 227(a)(1), has been interpreted to extend to unsolicited autodialed text messages sent to cellular phones.

20.     Cell-phone owners are entitled to the same consent-based protections for text messages as they are for ATDS telephone calls.

21.     Defendants bear the burden of showing that they had Plaintiff's and each Class Member's prior express written consent when sending them the text messages and must show that Plaintiff and the Class did not revoke consent or opt-out of receiving text messages.

## IV.     FACTS

22.     Plaintiff and the Class are "persons" as broadly defined by 47 U.S.C. § 153(39).

23.     Realtor.com, the official consumer-marketing website of Defendant NAR, is operated by Defendant MI for NAR and Realtor.com in furtherance of their strategic partnership and promotion of Realtor.com

24.     Defendants MI and NAR acted in concert, cooperatively, jointly, or on each other's behalf to commit the acts complained of herein.

25.     Among other services, through Realtor.com Defendants sell real estate leads to real estate brokers, agents, and professionals across Florida and the country. MI collects and culls Multiple Listing Service data for Realtor.com and NAR, and MI manages its presentation to members of NAR and on Realtor.com.

26.     Defendants MI and NAR, in order to advertise, solicit business, and sell real-estate leads, obtained the cellphone numbers of Plaintiff and the Class Members.

27.     Defendants then proceeded to send or cause to be sent telemarketing text messages to Plaintiff and the Class, using automatic telephone dialing equipment, all of which indicated they were from "Realtor.com."

28.     Plaintiff's telephone number is, and at all relevant times was, assigned to a cellular telephone service, as set forth in 47 U.S.C. 227(b)(1)(A)(iii).

29.     Defendants' text messages were incessant and sent in similar fashion to Plaintiff and Class Members.

30.     To opt-out of receiving Defendants' text messages, Defendants routinely instructed recipients to respond to these Realtor.com text messages with the word "Stop."

31.     However, Defendants' instruction was a misnomer and its designated opt-out response a ruse.  Despite Plaintiff and Class Members texting "Stop" in response to Defendants' text messages, Defendants' routinely and systematically continued to send the texts.

32.     Indeed, Defendants began sending or causing to be sent to Plaintiff Realtor.com text messages in early 2018, and pursuant to Defendants' opt-out instructions, after each one, Plaintiff responded with the word "Stop."

33.     Unfortunately, Defendants' desire to sell real-estate leads exceeded their desire to adhere to the restrictions in the TCPA or their own opt-out instructions.

34.     Despite Plaintiff's "Stop" reply, Defendants continued to send text messages to Plaintiff.

35.     Defendants' conduct was knowing and willful because indeed, after Plaintiff and the Class Members texted "Stop," Defendants responded telling Plaintiff and Class Members were "unsubscribed" from receiving texts, but then nonetheless continued sending or causing to be sent text messages using an ATDS.

36.     Some examples of Defendants' solicitations sent to Plaintiff and which absent specific geographical references are materially similar to those sent Class Members are represented below:





37.     After the first time Plaintiff texted "Stop" to opt-out, Defendants sent or caused to be sent to Plaintiff over two-hundred (200) unsolicited, automatic text messages.

38.     Defendants sent the text messages via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1).

39.     The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

40.     The texts came from a five-digit, non-conventional phone number or "Short Code," 649-94.

41.     This Short Code indicates also that Defendants used an Automatic to Peer ("A2P"), or similar technology, which is the precise type of ATDS technology that the TCPA regulates.

42.     The generic nature of Defendants' text messages, combined with the large number of messages sent by Defendants, further demonstrates that Defendants utilized an ATDS to send the text messages.

43.     In addition, Defendants conduct is uniform across Florida and the United States of America; Plaintiff is aware of the same or similar conduct in Florida, Texas, and North Carolina.

44.     Defendants' method of publishing material to potential consumers violated the privacy rights of those consumers.

45.     As a result of Defendants' TCPA violations, Plaintiff and the Class suffered injuries and damages including, without limitation, invasion of privacy and violation of their statutory rights to be free from Defendants' text solicitations and related conduct under the TCPA.

46.     Defendants' aforementioned conduct is ongoing and, unless enjoined by the Court, Defendants' conduct will continue to injure Plaintiff and Class Members in the future.

## V.    CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and

23(b)(3), on behalf of herself and "Class" or "Class Members" including others similarly situated

defined as follows:

### National Class
**All persons residing in the United States to which and to whom Defendants sent or caused to be sent a text message for Realtor.com using an ATDS after receiving the reply text message: "Stop."**

*Plaintiff anticipates the need to amend the class definitions as discovery progresses*

48.    ***Class Exclusions***: The following are excluded from the Class: 1) Defendants and

their employees or agents; 2) Plaintiff's attorneys and their employees; 3) the Honorable Judge to

whom this action is assigned and any member of the Judge's staff and immediate family; 4) claims

for personal injury, wrongful death, and/or emotional distress.

49.    ***Numerosity and Ascertainability***: The exact number of Class Members is unknown

and not readily available to Plaintiff at this time, but it is evident that joinder is impracticable.

Based upon information and understanding, Defendants have sent hundreds of thousands of

automatic text messages to the cellphones of thousands of Florida residents and persons residing

in the United States after receiving a "Stop" reply text message. The members of the Class,

therefore, are believed to be so numerous that joinder of all members is impracticable. Members

of the Class can be identified, and Class membership ascertained, objectively through Defendants'

records or the records of their agents.

50.    ***Typicality***: Plaintiff s claims are typical of the claims of other Class Members in

that both Plaintiff and the Class sustained damages arising out of Defendants' uniform policies

pertaining to sending automatic text messages without obtaining prior express consent.

51.     ***Commonality and Predominance***: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. Among the predominant questions of law and fact common to the Class are:

    i.    Whether Defendants made non-emergency text messages to Plaintiff's and Class Members' cellular telephones using an ATDS;

    ii.    Whether Defendants can meet their burden of showing that they obtained prior express written consent to send the text messages at issue;

    iii.    Whether Defendants sent text messages to Plaintiff and Class Members using an ATDS after receiving a "stop" opt-out reply.

    iv.    Whether Defendants' conduct was knowing and willful;

    v.    Whether Defendants are liable for damages, and the amount of such damages; and,

    vi.    Whether Defendants should be enjoined from such conduct in the future.

The common questions in this case will have common answers. If Plaintiff's claim that Defendants routinely transmit text messages to cellphones without obtaining prior express consent is accurate, Plaintiff and the Class Members will have materially identical claims capable of being adjudicated efficiently and administered in this case.

52.     ***Adequacy of Representation:*** Plaintiff will fairly and adequately represent and protect the interests of the Class and Defendants have no defenses unique to Plaintiff. Plaintiff has retained counsel competent and experienced in complex class actions and has no interest antagonistic to those of the Class.

53.     ***Superiority & Manageability***: Class proceedings in the instant matter are superior to all other available methods to ensure fair and efficient adjudication because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if

members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court; economies of time, effort and expense will be fostered and uniformity of decisions ensured.

54.     *Uniformity and General Applicability*: Defendants have acted or refused to act in a manner generally applicable to all members of the Class, thereby making injunctive relief to the entirety of the Class particularly appropriate.

## COUNT I
## VIOLATION OF THE TCPA. 47 U.S.C. § 227(b)

Plaintiff reaffirms, realleges, and incorporates by reference paragraphs 1-54 as if fully set forth herein.

55.     Defendants used or caused to be used equipment having the capacity to dial numbers without human intervention to send telemarketing text messages to the cellular telephones of Plaintiff and the other members of the Class defined above.

56.     Defendants sent these text messages after receiving a "Stop" reply text message, which Defendants represented would act as an "opt-out."

57.     Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an ATDS to send non-emergency text messages to the cellular telephones of Plaintiff and the other members of the Class without their prior express consent.

58.     As a result of the forgoing, Plaintiff and the Class suffered damages, including invasion of privacy and violation of their substantive statutory rights under the TCPA.

59.     Pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other Class Members are each entitled to a minimum of $500.00 in damages for each violation.

60.     Pursuant to § 227(g)(2) Plaintiff and the Class Members are entitled to a permanent or temporary injunction or restraining order without bond.

**WHEREFORE**, Plaintiff, Courtney Silverman, on behalf of herself and all others similarly situated, prays the Court for an Order awarding:

a.     $500.00 in statutory damages for each violation of the TCPA;

b.     $1,500.00 in statutory damages for each violation of the TCPA deemed willful or knowing;

c.     a permanent injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.     litigation costs; and

e.     such other and further relief as the Court deems proper.

## <u>JURY TRIAL REQUEST</u>

Plaintiff and the Class respectfully request a jury trial on all issues to triable.

Respectfully submitted this 26th day of September 2018, by:

FLAHERTY HENNESSY, LLP
8055 W. Manchester Avenue, Suite 420
Playa Del Rey, CA 90293
Phone: 310.305.1280
Fax:   310.305.1210
Email: sarah@fhattorneys.com

By: */s/ Sarah L. Hennessy*
    SARAH L. HENNESSY, ESQ.

ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email:       jshaw@zpllp.com
Secondary Email:    mperez@zpllp.com

JORDAN A. SHAW, ESQ.
*Pro Hac Vice Sought*
EDWARD H. ZEBERSKY, ESQ.
*Pro Hac Vice Sought*
MARK FISTOS, ESQ.
*Pro Hac Vice Sought*